may please the Court. My name is Mark Thierman. I represent the appellant, Central Sierra Construction. Pro Group, the third-party defendant appellee, made a promise and or representation to my client that their employees would be covered under California, when they worked in California, under a workman's compensation policy. Well, were they covered? No. Oh, yes, they were. No. They got the coverage, right? They paid the claims. And then I looked through the record to see, to find some basis or some facts that would say, because I assume when you say they were covered in California, what you mean to say is that the pro group insurance fulfilled Central Sierra's legal obligations for insurance in California. But I couldn't see anything that said that it didn't. So that was very confusing to me. Let me start by saying State Fund or any other insurance company in California will insure all your employees, if you have a policy with them, whether you pay premiums on them or not. But if you don't pay premiums on people who are working in California, they come back and they ask for premiums. The policy that Was that specific to State Fund, that you had some in your policy that said, we'll automatically cover your employees? My experience is... Tell them otherwise. Well, no, that's every workers' comp policy in California does that. But that was a specific element of the policy with the State Fund? I think that was in the Whitfield Declaration. Yes, it is. And it's the law, too, that they do that. What pro group now says it was providing, which, of course, is meaningless, was it was providing Nevada workers' comp for people working in California. That's crazy. You don't give Nevada workers' comp. Where in the record does it say that what pro group was providing did not fulfill your legal obligations in California? Because all I saw, I saw the contractors where you fill out this exemption form. I didn't see anything else addressing that question. It was State Fund who actually was taking the position that it wasn't sufficient. Well, but they were taking the position that for some reason or another you owed them the money, whether that was because the Nevada insurance wasn't adequate or whether it was because you were supposed to provide them some notice you hadn't provided them, exempting these people, was never very clear, was it? Well, the notice that no, actually, the notice was to the State Contractors License Board, and the notice had two boxes, none of which applied, and none of which would have applied, and it still would have kicked in the automatic coverage provision. The first part of the notice says we don't have any, any California residents working for us. Well, they did on occasion have California residents. That's why we had the State Fund policy to begin with, to cover those people. So you've checked the box. I mean, this exemption form. Well, that's just later. It's checked the box and it's signed. I am an out-of-State contractor and I do not hire employees who reside in California. Right. So the inference from this record is that that satisfied the State Contractors Board. I mean, I'm not saying it does or does not. That's a legal issue. But I didn't see the legal issue addressed as to that the insurance that you had from Pro Group did not satisfy California legal requirements. That's what I'm looking for. I guess you get it right from the fact that State Fund sued Central Sierra for premiums. Right. But Judge Berzon said that could have been because you didn't fulfill some obligation under the policy. But there was no other obligation under the policy but to insure these people and to pay premiums on them. And nobody in State Fund is saying that we didn't, that we had. There was no. I thought there was an obligation that if you're claiming an exemption for them, there is some language like that in the policy. If you're not covering them because you think you don't need to, you have to tell them. No, I don't think so. And not only that, but in the audit, that's not what they were asking for. They were saying this doesn't count. This insurance only covers them while they're in Nevada. So that's the policy, the State Fund's position, is that. It's the law of the State of California. Well, but how do I know that? It's the law of the State of California. You have to have coverage by an admitted carrier. Let's say we had no State Fund. Let's say that the workers came to California and we had this Nevada insurance company and they decide to pay Nevada claims. We'd still be operating in California without workers' comp because they're not admitted. But I mean, I had a real problem with that, too, which is you argued at length in the district court about the submitted insurer idea, but there's nothing in the record about either what California law is or whether there are admitted insurers or anything like that. I only have what the State Fund people were trying to do, which was to collect. And the State Fund people were. We don't know why they were trying to collect. We don't know whether they were trying to collect because these people weren't admitted, and we don't know if it would have made any difference if they were admitted. We don't know whether they were trying to collect because there was some obligation a procedural obligation that you didn't fulfill. That's one of the arguments that was made, that as soon as you did give the State Fund notice, they stopped trying to collect. So it must be because you didn't give them some notice. Kennedy. No, we paid them. I'm sorry? The result of the lawsuit was that we settled with State Fund over this very issue. The result of the underlying lawsuit, not the cross-complaint, is that we settled with State Fund because they continued to insist that because we did not have insurance coverage for these people in California. And if you look at the record, what pieces of the record say that State Fund? That the reason why State Fund claimed you owed them money was because Pro Group was not an admitted California insurer. I can only point to the State Fund complaint. That's the only thing I can point to in the record. And there is no other reason why we would they did an audit. I'm sorry. I'll take that back. We'll do it. Take the letter from the that the State Fund sent to Central Sierra. I'll find it in a second. Where it says we called the State and they told us that the insurance coverage They called Nevada. What? They called Nevada. Right. And Nevada was saying, well, this is what we think. I mean, what does that tell us about the law in California? Well, no. What it tells us is that they were looking for, that if they were, if they, if Nevada had said, no, no, these people are covered. Let me back up. California Workers' Comp has a reciprocal agreement. If other States recognize California Workers' Comp, you can bring in employees and cover them under your home State. There's an exception in California that says if the other State doesn't recognize us in an area, we don't recognize them. They called the Labor Commissioner because, or the Industrial Relations Commissioner because they wanted to know does Nevada recognize California Workers' Comp in construction? And the answer is not in construction. In every place else, yes, but not in construction. Therefore, that's why they called them. Otherwise, why would they call them? Why do they care? Why wouldn't they? Is that in here? The letter is in there. I see the letter, but I don't see that information. The letter is in there, and the only reason they would call was because if they are, in fact, covered, then workers, then State funds would turn around and say, no, they then they're covered. You don't get duplicate cover. And then the last paragraph says, To date, we haven't been provided with proof of Nevada coverage for these employees. Right. So that suggests had they been given the proof, they might have reached a different conclusion, and then subsequently Pro Group sends them a letter. But if you look at the March 5th letter, it says they are covered. Yes. So they received that letter. And that was inadequate because of the reciprocality agreements, because they weren't admitted. Well, how do we know about that? Well, I would suggest, though, that if that was the issue, then Pro Group and State funds should have battled it out. But they didn't. Pro Group said, oh, we only promised you that we were going to insure these people under Nevada's workers' comp rules. Well, Nevada doesn't have any workers' comp rules that apply in California. So what were we paying premiums for? No. I understood them to say, we only promised you that we would cover your Nevada residents when they work in California, and we did. But they didn't. They did cover them. No. They paid claims as if somebody had no insurance and decided to pay claims because they didn't want to be sued. But you you the trouble is that you're there's two levels here. There is the actual insurance obligation, and then there's whatever State law obligations there are to have the workers' comp insurance. And you're sort of intermingling the two as to whether or not they in fact insured people in California and paid their claims. They did. Your complaint is that there was some implicit representation that you wouldn't also have to have insurance in California because everybody in this field, which may be so, understands that you wouldn't have two sets of coverage. So they were implicitly telling you that this was good coverage. They essentially were making a legal representation to your client that this insurance, which is insurance, is going to cover your California legal obligation. But it's not really workers' comp insurance because workers' comp insurance is the State's sanctioned program. It's not an insurance just to take care of the workers who's hurt. That would be some kind of disability insurance. It's only workers' compensation insurance if the State says it satisfies their requirements. Then there isn't any workers' comp insurance in California because they don't have the power to grant it even if they wanted to. If I bought a policy from some place in New York that has no license whatsoever in California and they promised to pay all the workers' comp bills that come along, it's still not workers' comp insurance. Comp insurance just doesn't meet your legal obligation. That's the way I look at it. No. It would be disability insurance. It might be medical insurance. But it would not be workers' comp insurance because it wouldn't fit the definition of what workers' comp insurance is. Workers' comp insurance is what the State says they've set. What about what evidence do you have in the record that this representation, assuming its relevance, was ever made? Again, I think nobody's even the representation is Central Sierra has provided written the first paragraph of that May 5th letter, March 5th letter. Builders of Nevada's self-insurance for workers' compensation has insured Central Sierra construction for all temporary work in the State of California. They walked in and they said, look, we have a policy that will cover your workers in both States. This is great. You don't have to pay two premiums. Sierra says, well, sign up. We don't. Say you won't have to pay two premiums? We don't have to pay a State fund. Can they say you don't have to pay two premiums? I'm using a little hyperbole. But, yes, they said it in their heads. I'm going to save money. I'm going to have one policy instead of a State fund. But no representation was made that you didn't have to pay. I understand. I mean, what's really going on here is there's sort of a world of people who live in the workers' comp world and they have sort of a set of understandings is what you're saying, really. Right. And in that world, these representations may have had a meaning other than what they said. That seems to me what you're really saying. Well, it's a little bit stronger than that because when you're a contractor, you buy workers' comp insurance. If they tell you they're giving you workers' comp, and there's a certificate saying they cover projects in California. So, I mean, if you buy workers' comp insurance, you're buying workers' comp insurance. You're satisfying the legal obligation to provide workers' comp insurance. And they didn't. They didn't give them that. Did the State of California now the so the contractor, the State Contractors Board, in order to do your work, you would need to certify that you had workers. Exactly. Now, did the Contractors Board or did any other State entity stop you from doing work because you lacked workers' comp insurance? No, but on 287. No? They did not? No, because what happened is we had for the California resident workers' State comp, and we had a certificate of coverage that looked very official. It's a 287 that we handed out to all the projects because the project owners want the compensation insurance, too. They're required to show it. And it said, yeah, we cover these people. Everyone thought they had insurance. Was there an adjudication or a California agency determination that you didn't have coverage? State fund coming back and doing the audit. The State fund is not the State of California, right? That's just, in fact, a supposed. It's a quasi-coverage. The statute says you must say you are not a branch of the State of California. So they were set up by the State, but they're not the State. They couldn't penalize you, correct? No, they audited. It's just a policy. Right. So you might owe them something under your policy. They audited and they said, these are workers who worked in California. You owe us premiums because we were at risk. They said they were on the risk, but we don't know exactly why. And you're telling us now in court that the reason is because they had made a determination that the Nevada insurance was not sufficient. But the State of California never had a ruling or you were never penalized or prevented from working. Is that correct? Right. Because they had a certificate of insurance, and then when this thing settled down, they went and paid workers' comp in California for California work, and they never had a ruling on anything. They settled it with the State comp, with the State fund, paying premiums that they thought they didn't owe because of the work in California, not because of the work in Nevada, and that was testified to at the hearing. And they said, no, there were four claims, two of which were California claims and we paid them, two of which weren't. It's the work in California. It's all these certificates that they submitted. That's the work that should have been covered by some insurance company that was recognized by the State. So you settled this claim with the State fund. Right. So there never was a judicial determination of the issue. That's right. What letter is there from where in the record is a letter from State fund that says you have to pay? I know there's a March 4th letter, there's a March 5th letter, there's a March 9th letter there. But the one that says you need to pay after all this inquiry, what letter is that? That's the – well, it's the complaint by State fund that we need to pay. Their complaint against the kickoff. So they never told – what I'm trying to get at is they never told you in writing why after they got the pro-group policy you still needed to pay. Well, they actually did. They said we called the State Labor Commissioner of Nevada and we confirmed that there was no reciprocality, which of course they already knew, that there was no reciprocality for construction. Therefore – But they also said that they didn't have anything from pro-group. Then they did get something from pro-group. They got something from pro-group. And after that there's no further communication? No. And then you file in September of the same year or the next year? I think it was the next year. No, the same year. The same year. This exemption from workers' compensation. I would say, yeah. And after that, did you have to pay any more? Yeah, after that we did because we did more – we did work with California employees. But with Nevada employees you had to pay? Oh, yes. We covered them with Nevada under a state fund. We covered them. And we did not cover them with pro-group. We were paying premiums to pro-group for the coverage in California. They can't write insurance in California. Okay. Thank you very much. Thank you very much, Your Honor. May it please the Court, Elizabeth Stallard on behalf of pro-group management at the Builders Association of Western Nevada and the Builders Association of Western Nevada Self-Insured Group. Quite a mouthful. If the Court has any questions initially, I'm happy to entertain them or I can address them. Can I ask a question? Sure. Does the insurance written by pro-group fulfill the legal obligations of Central Sierra and California as to their Nevada workers? Pro-group never made any representations as to the reporting requirements that Central Sierra needs to comply with in California. That wasn't the question. Excuse me. It wasn't the question. Please answer the question. Sure. Any temporary the coverage only applies to Nevada-based and Nevada-hired employees. Any Nevada-based and Nevada-hired employees working in Nevada or temporarily working out of State, so long as they filled out the applicable form, could obtain their coverage from the insurance that was provided by my client.  But the question is, is that a legally adequate insurance for California purposes? Does California accept that as workers' comp, or would they require that the workers' comp come from State funders in California at workers' comp? The fact, well, first of all, there was no evidence presented by Central Sierra indicating that it was not appropriate coverage to be used in California. In addition, the exemption that was filed by them in September, and that's excerpts of Record 314, indicates that out-of-State coverage may be used to comply with California's workers' compensation requirements. So is it a disputed issue that Nevada insurance could be used in California, or is that not disputed while we're just talking about what evidence was in the record? Could Nevada insurance be used in California or not? Yes. It can't. So you dispute, because the opposing counsel says it cannot be. We need it to get State workers' comp insurance. The point is, though, that there's no evidence that State funder or anyone else informed them that their Builders Association insurance wouldn't have covered their temporary employees from Nevada working in California. If it did cover them once they found out that they had the insurance, then why do they still owe $250,000 or $70,000? Your Honor, I actually don't know why that information. We haven't been privy to the negotiations that Central Sierra engaged in with State fund. We provided information consistent with our earlier representations that they had temporary work in other States in California. We don't know if – I'm sorry. Go ahead and finish. I was just going to say, we don't know, as you raised earlier, why State fund then decided that they still should pay the premiums. Perhaps it's because they didn't file the exemption and they were required to do so. I think that that's been put forward in the record, and that's – given that there's no counter evidence, there's no reason to believe it's not the case. But he says, although it doesn't seem to be in the record either, that after they filed this exemption, they still had to pay on the Nevada people. That's never been put before the Court. Also, there's no indication that any premiums or payments were made for Nevada-based hired employees. After the exemption was filed. We don't have any of that before us. Aren't those fact questions that would be developed by Discovery? And, I mean, were there any depositions taken in this case? There were no – Whitfield came in with some testimony or affidavit or something, but – The affidavits were presented by both sides. On behalf of my clients, they had affidavits from both the person who made the initial representations on behalf of Pro Group, Michelle Whaley, as well as by two other individuals at Pro Group who processed the claims that proved that insurance was available. I'm concerned about this summary judgment possibly being premature here on the – assuming that there were no disputed questions. The fact, it sounds to me, after listening to the appellant's argument, that there are questions of fact that are not free from dispute. The standard before the Court on summary judgment has to be to evaluate whether or not the party opposing summary judgment has provided sufficient evidence to create a genuine issue. There is a conflict of fact, unless one eliminates one or the other of them on some technical ground, in which Whitfield says there was never – that there was a representation made by your company to Central Sierra that there – that this would satisfy California workers' comp law, and you have a person who says absolutely she never made such a representation. So why isn't that sufficient? And that's related to the fact that the district court, as I perceive it, to avoid that problem, went off on a unreasonable reliance theory. So I guess I have two questions. What's wrong with that conflict, and do you support the reasonable reliance determination? Initially, with respect to the conflict, the reason why Mr. Whitfield's declaration or affidavit does not provide sufficient evidence is because he doesn't speak from personal knowledge. He doesn't identify who made the representations. He doesn't identify any facts. So you have a technical objection to his declaration? Well, just that all it is is a conclusion that we received a representation about our ability to use this for California reporting requirements when everything in the record indicates that Pro Group was never in a position to make those recommendations. There was none of the facts provided related to California law. All right. But that's not a summary judgment. I mean, if you accept his representation, then we don't do summary judgment. You guys go and either have another and better summary judgment after some depositions or you – have there been any depositions in this case? There were no depositions taken. And just for – there were – this litigation was pending for over two years, and Senator Slater had every opportunity to seek depositions, but didn't seek any depositions of our clients. I mean, we couldn't have – But was there a discovery period? Yes, there was. Was it over? By the time the motions for summary judgment were filed, yes. I see. So just nobody ever did anything. Correct. Well, other than submitting affidavits in support of their position. Right. I mean, we wouldn't have deposed our own clients, but – and in light of the fact that there wasn't any particular evidence about the representations provided by Mr. Whitfield, either in an initial declaration or at that point in time, there wasn't any evidence of anything other than the representations that were made. The key issue with respect to unreasonable reliance, to go to the other issue, is I think whether or not the exemption applies is important and relevant with respect to – Whether or not what exemption applies? The exemption that they could have filed and then used their Nevada workers' compensation insurance to cover temporary employees working in California. It's significant not just because it addresses the argument that there wasn't coverage available, this whole thing that the coverage wasn't as it was negotiated when, in fact, it was, but regardless of whether or not a one-page exemption needed to be filed or whether there was some other document that needed to be filed or whether even it would have been appropriate for them to just call State fund and say, so we've got this Nevada workers' compensation insurance. We're engaging in construction operations in your State. I mean, they're a construction company that's been doing work in California. Do we have any reporting requirements? Can we use this insurance? Those representations were never made by Pro Group. They never – in fact, they made the opposite representation. Maybe you should keep your California insurance. We don't know what the requirements are with respect to reporting in other States. One only reaches this question if one assumes that Pro Group did make an affirmative representation that this would satisfy California requirements. In other words, that's the only reason you get to the reliance issue. So one has to assume that that representation was made. And if that representation is made by a workers' comp insurer who is purporting to sell insurance covering people working in California, do they have any obligation to go behind that? Well, they never made that representation, Your Honor. Well, I understand that. But the point is that that wasn't how the district judge decided the case. Presumably the reason he didn't decide the case that way is because he was concerned, as he said at the hearing, about the fact that he would have to have declared the Whitefield Declaration essentially, you know, legally insufficient. And he never did that. Instead, he seemed to have assumed the representation was made and said that there was unreasonable reliance. And what I'm asking you is, so you have to assume that in order to answer the question intelligently. So assuming that, can you answer the question? Assuming that Pro Group had told Central Sierra, we're selling you insurance that means that you never have to do anything else with respect to covering any of your employees operating in California? Not any. Nevada resident employees, because that's all you ever purported to cover. In a world where that had occurred, perhaps there would be a claim. If that, in fact, was not the case, then there would be perhaps a claim for misrepresentation. But ultimately, I think when you look back at the district court's opinion. But that's what the district court decided. The district court decided that there wouldn't be because they unreasonably relied. And I want to, so you're essentially walking away from that whole thing. No, no, I'm not. I don't think the reliance was reasonable based on, and the district court does evaluate this, based on the fact that they were a construction company operating in California already, already had had dealings with State Fund. They had access to advice of counsel. They had every reason. But didn't the California law say that if it's an intentional misrepresentation, there's no obligation to do an investigation? The district courts rely on a New York, a New York law. But they also rely on California authority guido and talking about what would have been reasonable within the intelligence and knowledge of the person relying. And so in light of that, simply, they had every reason based on their operations to inquire as to what their obligations were. And I do believe that the district court went through the exercise of discussing reliance just to say that regardless of whether or not, if I did, in fact, even assume the Whitfield Declaration to be true, which, as is evident from the district court's opinion, that was not the case because it lacked specific facts and because it lacked the bases of personal knowledge required under Rule 56. Even then, I wouldn't get to, I couldn't support reasonable reliance based on the situation of the parties, particularly since Pro Group never made any representations with respect to California, which I know gets back to the original issue. But I think looking at the parties, when Central Sierra is saying they were an insurance company, we had the right to rely on anything they said about insurance, they were a Nevada insurance company providing Nevada insurance coverage to Nevada companies. Kagan in California. I think that's a weak argument. Okay. Because you were selling insurance that purported to cover people in California. It did allow for individuals who were working for these Nevada companies, if they worked in another State, they could fill out a form, and then later on, if they were wanted to as well for their coverage. That is true. It wasn't marketed. And that was certainly a selling point here. And your representative never said she didn't tell them these people were being covered. She just said she didn't tell them that they wouldn't have a problem with California. She never made any representations with respect to the reporting requirements in California at all. But she did make a representation that this was insurance covering people in Nevada and promoted that. I mean, that was a reason for them to buy it. She represented that their temporary out-of-State employees, regardless of whatever that State was, there wasn't a, you know, specific identification, they could seek benefits under the policy. And in fact, Central Sierra did seek those benefits under the policy. Did they have to? No. They could have, you know, temporary employee could have not filled out the form and could have sought benefits elsewhere. But it was a benefit provided under the policy in which they obtained payment from. The claims were paid. Yeah. What I'm hearing from you is Pro Group has made this representation. Central Sierra made an opposing representation. And on summary judgment, we take all, make all inferences in favor of the nonmoving party. So it sounds to me like you're saying there is a genuine issue of material fact. Why isn't that what your argument now is boiling down to? Or at least that's what I'm hearing. Because there isn't sufficient evidence presented opposing. The fact that no representation was made regarding reporting requirements in California. The only thing presented is the Whitfield Declaration. So what you're basing it on is you're saying that the affidavit or the declaration by Whitfield, Whitfield? Yes. Was inadequate as a matter of our summary judgment standard, because it wasn't based on personal knowledge. Is that the point of your argument? That's one of the points. You said it was based on personal knowledge. It begins by saying this is all based on personal knowledge. Right. But there's no, there's no description of any personal encounter he had with anyone regarding these issues. He indicates that the company received representations, but he doesn't say who received them or what they were. It's a conclusionary accusation. That's true. It's vague. But he does say it's based on personal knowledge. But there's no indication that he had personal knowledge within the declaration itself. And moreover, it's not just a case law that says that if somebody says I know this is based on personal knowledge, that the fact that he doesn't then detail what the personal knowledge is, is, makes it insufficient for summary judgment purposes? Well, there is authority saying that conclusionary allegations without the specific facts detailing them doesn't make for sufficient evidence to support a decision on a motion for summary judgment, and that's what happened here. There aren't sufficient facts in there. That's different from saying he doesn't have personal knowledge. He said he had personal knowledge. Well, he's required to speak to things within his personal knowledge. He's required to what? In accordance with Rule 56, there's a requirement that the affidavits speak to personal knowledge. He said that he had personal knowledge. So I'm asking you, is there any case law that says when somebody says I am saying this of personal knowledge, that if the substantive allegation doesn't say how he has his personal knowledge, that makes it invalid? I'm unaware of anything addressing that particular issue. The point is more that there isn't any indication within the affidavit itself supporting the conclusionary allegations made. And if anything, you can look to his prior declaration. It wasn't really conclusionary. It just didn't say who said what to whom. If you, in the record at 340, 341, this is a prior declaration also submitted by Mr. Whitfield. He indicates that because he relied on the statement that his temporary employee and this is paragraph 4, that his employees performing temporary work in California would be covered by the policy because they believed the representation and on that belief didn't obtain a separate policy. That's as close as they get. They leap from we were told we could get coverage to we didn't check with California and make our reporting obligations. That doesn't show the significant connection needed to establish that they relied on a false representation from our clients, from my clients. But I also think it's important that the State Fund letter. Kagan. You're running over your time, so please wrap up. Just to address the State Fund letter, which is also used in support of Central Sierra's argument, there's nothing in that letter indicating that State Fund's determination was based on the ability of this coverage to apply in California. The inquiries made by State Fund to Nevada were about Nevada statutes, this whole idea of reciprocity. All they found out was that the Nevada statute requires that employees working in Nevada be covered by Nevada coverage. It doesn't address the issue. Thank you very much. Thank you. Very briefly, Your Honors. Page 167 of the record is that March 4th letter. The first sentence in the second paragraph. Upon notification, I contacted Debbie Bradbury. She was the office secretary at Central Sierra and advised her that Nevada contractors working in California need to report under the California policy. And it then continues with a statement about 616B.600, Section 3, states the exemption provided in this section does not apply to employees of a contractor, contractor as defined, and Central Sierra is a contractor. In other words, there is an exception for reciprocity. It doesn't apply in the construction industry. And Central and State Fund wanted its premium because it was at risk. And we relied on the representation and the forms that they filled out that, in fact, even the forms they talked about when the employee fills out. So then you have this exemption form, and it says you can check what you did check for an exemption. And then what? That suggests that if you've checked that and give them the report, then you don't have to pay for it. No. That's for the license board. And what it says is the license board. Yeah, it's the contractor's license board. But what it says is there are two exemptions. The first exemption says I have no California employees. Well, they had California employees. They had some resident employees. So that one didn't apply. And the second one says I have no one covered by workers' comp, which obviously we did. What? It's for people who don't have employees inside the State of California doing trade work or doing construction work. It's not for people who bring in out-of-State workers to work in California. So this exemption from workers' compensation. Right. I am an out-of-State contractor, and I do not hire employees who reside in California. Okay. And you check that. Right. Well, we do. Please provide a certificate of insurance from your workers' compensation insurance carrier. Now, that's at least suggests that people who don't reside in California, but who work for you, you can't get an exemption for. Well, that's you can get an exemption if you don't take those people into California. It doesn't say that. I know it doesn't. It's a bad form. It says I am an out-of-State contractor, and I do not hire employees who reside in California. I know. It's a bad form. All right. Is there anything in this record that suggests whether after you filed this thing you still had to pay? Yeah, because we not in the record, but we did. We had settled. The case continued, and we settled, and then we paid. I mean, that's the What's really distressing about this case is that it would seem that you might have done a little better in developing a record. Anyway, thank you. Thank you, Your Honor. Thank you. The case of Central Sierra. This is what we call this case. Construction v. Procourt Management is submitted, and we are in recess. We are finished for the week. Thank you very much.
judges: Goodwin, Berzon, Ikuta